Davis, Judge,
delivered the opinion of the court:
Mr. and Mrs. Gooding have brought these refund suits to regain admitted overpayments of income taxes for 1946. Under the stipulated facts, recovery is time-barred unless the mitigation portion of the Internal Bevenue Code of 1954, §§ 1311-1315, or the doctrine of equitable recoupment is applicable.
*200 On August 24,1946, the Goodings and tbeir minor daughter, who had operated an amusement-park equipment business as partners, transferred their respective interests in the assets formerly used by the partnership[1] to the Gooding Amusement Company, Inc. (a corporation organized on the same day). In return, the plaintiffs and their daughter received all of the corporate common stock, certain notes of the corporation, and an assumption by the corporation of their liability for the partnership debts. The assets, at that time, had a fair market value of $294,970.34, and a depreciated book value or adjusted basis of $180,237.29. The assets’ fair market value of $294,970.34 was the total consideration paid by the new company.
As a result of this transaction, Mr. Gooding received as his portion of the consideration $168,554.51, consisting of 140 shares of no-par common stock having a stated value of $28,000,5 notes due in successive years (beginning in 1947) totalling $132,572.08, and an assumption of liability of $7,982.43 (which was his share of the partnership debt). Mrs. Gooding received as her part $84,277.25, in the form of 70 shares of stock ($14,000), 5 notes ($66,286.04), and an assumption of her liability ($3,991.21).
For the year 1946, the Goodings filed separate returns treating this transaction as taxable to the extent of the notes received, as “other property” or “boot” under Section 112(c) of the 1939 Code. Accordingly, they recognized long-term capital gains of $65,561.76 and $32,780.87, respectively the consideration received by each, less the adjusted basis of the assets attributable to each). A capital gains tax was paid on these sums and the Internal Revenue Service, upon audit of the returns, accepted the taxpayers’ treatment of the transaction as requiring the recognition of gain.
In 1947, the corporation paid the first of the notes held by Mr. Gooding ($26,514.42) and part of one of the notes held by Mrs. Gooding ($5,000); in 1948, another of the notes held by Mr. Gooding was paid ($26,514.42). The taxpayers treated the proceeds of these payments as a return of capital *201 and therefore not taxable. The Internal [Revenue service disagreed. After limitations had run for 1946, the Service determined that the 1946 transaction was a tax-free exchange under Section 112(b) (5) of the 1939 Code and that the payments on the three notes in 1947 and 1948 were distributions of earnings and profits, fully taxable at ordinary income rates as a taxable dividend. The view of the Service was sustained in a decision of the Tax Court (Gooding Amusement Co., Inc., v. Commissioner, 23 T.C. 408 (1954), aff’d, 236 F. 2d 159 (C.A. 6,1956), cert. denied, 352 T7.S. 1031 (1957)) which became final on March 11,1957. Within a few months, taxpayers filed claims for refund of the capital gains taxes paid for 1946. These claims were rejected on June 16, 1958. In 1959, plaintiffs filed petitions in this court seeking recovery of all the 1946 taxes paid on the erroneous supposition that the reorganization was a -taxable transaction.
To pass over the limitations hurdle, the Goodings rely primarily on the mitigation provisions of the 1954 Code[2] (sections 1311-1315) which grant extra-limitations relief to the taxpayer and the Government if and when they suffer from inconsistent treatment of tax matters by the other side. This relief is limited to defined circumstances; the statute “does not purport to permit the correction of all errors and inequities.” Brennen v. Commissioner, 20 T.C. 495, 500 (1953).
The defendant admits that the position it took (and which the Tax Court adopted) with respect to the payments on the notes in 1947 and 1948 was inconsistent with its acceptance of the capital gains tax in 1946. Defendant also concedes that the treatment given the 1946 transaction was erroneous; it should have been considered non-taxable. Thus far, the case falls under section 1311 which declares that where “the correction of the effect of the error * * * is prevented by operation of any law or rule of law [here, the statute of limitations] * * * then the effect of the error shall be corrected by an adjustment,” if the Service has maintained, and a court has accepted, an inconsistent position with respect to an erroneous *202 “inclusion” of income or “recognition” of gain.[3] The dispute arises because the adjustment permitted by the mitigation provisions is confined to the specific groups of cases listed in section 1312. The defendant maintains that taxpayers’ situation fits none of these classes; the taxpayers assert that they can rely on either of two named categories: “Double Inclusion of an Item of Gross Income” (§ 1312(1)), or “Basis of Property After Erroneous Treatment of a Prior Transaction” (§ 1312(1)). We agree that section 1312(7) applies, and therefore do not assess the other alternative.
Section 1312(7) provides:
(7) Basis of property after erroneous treatment of a prior transaction.—
(A) General rule. — The determination determines the basis of property, and in respect of any transaction on which such basis depends, or in respect of any transaction which was erroneously treated as affecting such basis, there occurred with respect to a taxpayer described in subparagraph (B) of this paragraph any of the errors described in subparagraph (C) of this paragraph.
(B) * * * Taxpayers with respect to whom the erroneous treatment occurred must be—
(i) the taxpayer with respect to whom the determination is made * * *
«H
(O') Prior erroneous treatment. — With respect to a taxpayer described in subparagraph (B) of this paragraph—
(i) there was an erroneous inclusion in, or omission from, gross income,
(ii) there was an erroneous recognition, or nonrecognition, of gain or loss * * *
It is agreed that the Tax Court ruling on the 1947 and 1948 payments was a “determination” under the statute. The only disagreement is whether that decision “determine[d] the basis of property,” within subparagraph A.[4]
*203 The Tax Court found that for tax purposes the notes received by the taxpayers in 1946 were not bona fide evidences of indebtedness, but were more nearly in the nature of stock or equity instruments.[5] The necessary result of that holding is that the notes could not have constituted “other property” which subjected the 1946 transaction to recognition of gain to the extent of the “other property” or “boot” (see Section 112(c) of the 1939 Code); there was thus an erroneous recognition of gain at the time of that transaction. 1939 Code, § 112(b) (5).
How did this affect basis? Under the taxpayers’ original position that the 1946 transaction entailed recognizable gain, the notes plus the stock would have had a basis equal to the fair market value of the assets transferred by the Goodings to the new company (see United States v. Davis, 370 U.S. 65, 72 (1962)); the basis of each of the notes would have been equivalent to its face amount (the notes plus the stated value of the no-par stock equaled the fair market value of the transferred assets). Under the view of the Tax Court that the 1946 transaction was a tax-free exchange, the notes and the stock shared a common basis equivalent to the adjusted basis of the assets. 1939 Code, § 113(a) (6). Since this adjusted basis was lower than the fair market value, the immediate effect of the Tax Court decision was to reduce the total basis of the notes and stock from what it was under the position taken by the taxpayers and the Internal Revenue Service in 1946. With respect to the particular notes which were satisfied in 1947 and 1948, the effect on basis was even more drastic. For the Tax Court to uphold a tax on all of the proceeds of those notes, they must have been treated as having no basis — neither a proportion of the lower adjusted basis nor a proportion of the higher fair market value. If *204 tbey were deemed to have a basis, tibe taxpayers would have to be permitted to recover it before being taxed on the gain or some other arrangement would have to be made for the basis. The levy sustained by the Tax Court was on the entire proceeds of the notes, not merely the excess over basis. What happened is that, by operation of law, any basis the redeemed notes initially had was reallocated to the remaining notes and the stock. See Stolz v. Commissioner, 30 T.C. 530, 538-39 (1958), aff'd per curiam, 267 F. 2d 482 (C.A. 5, 1959); Treas. Reg. §1.302-2 (1954 Code). See also Curlee v. Commissioner, 28 B.T.A. 773, 782 (1933), afd, 76 F. 2d 472 (C.A. 8, 1935), cert. denied, 296 U.S. 599, 600 (1936).
We think that a court decision with such a direct, immediate, and drastic impact on the basis o.f the notes is a determination of the basis of that property under section 1312(7) (A). It is unimportant that the Tax Court did not spell out the change in basis which would follow upon its decision or that it failed to advert specifically to the problem of basis. A major shift in the basis of the notes was a necessary result of the decision, implicit in its rationale. More than that — as we have just pointed out — the court could not have approved the tax on the full proceeds of the notes without deciding that the notes had no basis to be recovered or that the basis would have to be reallocated. Neither the involvement of basis nor the effect on basis was tangential, conjectural, oblique, or incidental; both were direct, immediate, and massive. Unless the complicated words of the mitigation provisions are to be given some special, restricted application, we would seem to have here (in the Tax Court’s ruling) a “determination of basis” in the normal sense. Cf. Rosenbergerv. United States, 138 F. Supp. 117, 119 (E.D. Mo., 1955), aff'd, 235 F. 2d 69, 73-74 (C.A. 8, 1956).
The Government says, in effect, that the courts have already given such a singular reading to section 1312(7) and its predecessors. We are referred to Tax Court and Second Circuit rulings denying mitigation, but those decisions, whether right or wrong,[6] do not touch our case. In the *205 precursor, American Foundation Co. v. Commissioner, 2 T.C. 502 (1943), the taxpayer sold its mining company (in 1931) to a corporation for a consideration which, included 15,000 shares of the corporation’s stock having a fair market value of $20 per share (adjusted basis was lower). The taxpayer did not recognize any gain with respect to the stock, but the Internal Revenue Service felt otherwise and assessed a deficiency; on the latter view, the basis of the stock would be its fair market value. The deficiency was paid and the taxpayer brought suit for a refund, claiming that no gain should have been recognized for 1931. While this was pending, the taxpayer sold some of the shares in 1934, 1936, and 1937, returning a gain which was computed by using the fair market value of the shares as basis rather than the lower adjusted basis. Thereafter, when a reopening of the transactions in 1934, 1936 and 1937 was time-barred, the district court, in a final determination, sustained the taxpayer’s position that no gain should have been recognized with respect to the stock received in the 1931 transaction. The Service, then, pursuant to the basis provision of the mitigation sections, assessed a deficiency for the later years when the stock sales took place, on the ground that adjusted basis rather than fair market value should have been employed. The Tax Court held against the Commissioner. It said, first, that the district court’s ruling on the 1931 transaction did not determine basis, but only whether there was a recognizable gain on the receipt of the shares in 1931. That ground of the Tax Court’s decision does not govern here. Since the prior district court ruling in American Foundation had held the transaction non-taxable, and therefore that gain should not be recognized and taxed, the district court can be said to have had no occasion to consider, pass upon, or take account of basis — which is normally involved (in direct fashion) where gain is assessed and taxed, but not where gain, whatever amount it may be, is still to be recognized. In the Goodings’ case, on the other hand, the Tax Court upheld the levy and therefore, as we have said, must necessarily have taken account of basis.
*206 The second ground of the American Foundation Co. opinion also distinguishes that case. The court held that the Government failed to come under the mitigation provisions because the taxpayer’s “omission” from gross income in 1934, 1936, and 1937, was with respect to the sale of the shares in those years and not with respect to the transaction upon which the basis depended, i.e.: the 1931 transaction. In our case that condition is met; taxpayers seek to recover for 1946.
The other decisions cited by defendant[7] can also be put apart. They were concerned with the question of whether prior rulings that certain amounts should be deducted rather than capitalized constituted “determinations of basis”; it was held that they were not. In none of these cases was the tax consequences of a transaction involving a disposition of property before the prior courts. Their decisions merely had an incidental or tangential effect on basis and did not have to take account of the basis of any particular property.
The Government’s next line of defense is that, since the basis of the notes which were paid in 1947 and 1948 is allocated to the corporate stock and the unredeemed notes, the taxpayers cannot yet claim to have been hurt by the defendant’s discordant positions since no final determination of basis has yet been made; unless and until the reallocated basis is used to compute gain, defendant says, the taxpayers can suffer no injury arising from their payment both of the capital gains tax in 1946 and of ordinary income taxes in 1947 and 1948. It may be that, in the long run, there will be no occasion for the Internal Revenue Service to assert that the basis of the remaining assets (stock and notes) is less than the fair market value (in 1946) which would have been the basis if the view taken by both the taxpayers and the Government in 1946 had been correct.[8] If that is so, *207 plaintiffs will not, in the long run, be subjected to an inconsistent treatment of basis; on the other hand, if at some later time the Commissioner does have occasion to insist on a lower basis the mitigation provisions can then he invoked.
Though this argument has some theoretical appeal, we believe that it should be rejected. To postpone indefinitely, perhaps to the Greek calends, the calculus of injury-plus-inconsistency would clash with the basic aims of the mitigation provisions, as well as with the structure of our income tax system. Sections 1311-1315 create a mechanism of relief, designed in general to operate when a formal determination validates an inconsistent position so as to cause an apparent injustice. See Gooch Milling & Elevator Co. v. United States, 111 Ct. Cl. 576, 581, 78 F. Supp. 94, 97 (1948).[9] The Tax Court’s holding against taxpayers was a definitive ruling plainly adopting a position opposed to that taken by the Government when the 1946 transaction was under scrutiny. The immediate result of the decision sanctioning that inconsistency was that, taking the years 1946, 1947, and 1948 together, the taxpayers had to pay more taxes than they really owed. Even in the long run, the probable consequence of the decision — though not the inevitable result — is that taxpayers would ultimately pay (leaving aside the mitigation provisions) more taxes than they would have paid if the 1946 transaction had been deemed non-taxable. Certainly, there is no reason to say that in the end taxpayers will receive a windfall if mitigation is now allowed. These considerations suggest that it fulfills the general purposes underlying sections 1311-1315 to cure at this time what seems today to be an injustice stemming from the Government’s inconsistency. Added to this factor is the broad principle, infused into our income tax structure through the annual accounting system and in other ways, that, unless some good *208 reason is advanced for an exception, there should not be indefinite prolongation of the tax effects of events or transactions. The summing up of accounts between the Treasury and the taxpayer is not usually allowed to drag along for an uncertain protracted period. Cf. Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931). The Tax Court’s ruling is a sharp, specific, event which can easily be the occasion for striking a balance between citizen and Government. If the choice is between clearing the slate sooner rather than later, we think that the Congress which authorized the mitigation provisions would incline toward having it done in the present rather than the indeterminate future. In this light, the Tax Court’s decision can properly be viewed as the basis determination of which section 1312(7) speaks, even though it is conceivable that in the long run the taxpayers will not be pecuniarily hurt by the Government’s change of position.
The defendant also urges that, in any event, the Goodings should be barred from recovery because they would have had to pay the same capital gains tax for 1946 even if the particular notes paid in 1947 and 1948 had not been treated as “boot.”[10] This would be so only if we continued the error of regarding the 1946 transaction as involving “boot” (i.e., the notes) and therefore as taxable. But the mitigation provisions demand that, after the Tax Court’s determination, we must look at the 1946 transaction correctly— as a tax-free exchange. In its references to the prior “transaction,” section 1312(7) (A) requires that, although the total effects of the error may not be wiped out at once, the proper view of the transaction itself must be adopted. What the Government would have us do is to make the proper adjustment for the satisfied notes and then compensate for it by regarding the remaining items (stock and outstanding *209 notes) as still within the frame of the wrong picture of the 1946 transaction.[11]
Nevertheless, we cannot allow the taxpayers to recover the whole capital gains tax paid for 1946, but only that portion of the tax allocable to the three notes paid in 1947 and 1948 which were the subject of the Tax Court’s decision. The mitigation provisions do not authorize the recovery of all the tax erroneously paid, without more. Section 1314(a) specifies that the adjustment in the erroneous impost must be confined to that “which results solely from the correct treatment of the item which was the subject of the error * * The legislative history also admonishes that the mitigation provisions are “predicated on the principle that correction is made only with respect to the item involved in the determination. The operation of the bar of the statute of limitations is not affected with respect to any other item, even though such other item also had been erroneously treated in the same year. As to these items there has been no change of position, no double tax or double deduction, to call for the relief provided by this section.” S. Rep. No. 1567, 75th Cong., 3d Sess. 52 (1938). The opinions which advert to this issue have taken the same stand. Central Hanover Bank & Trust Co. v. United States, 163 F. 2d 60, 64 (C.A. 2, 1947); Gill v. Commissioner, 306 F. 2d 902, 906 (C.A. 5, 1962); First Nat. Bank of Phila. v. Commissioner, 205 F. 2d 82, 86 (C.A. 3, 1953)). For the present taxpayers this rule measures recovery by the three satisfied notes which were paid or partially paid and as to which the taxpayers have already been hurt by the defendant’s inconsistency. They have not similarly suffered on account of the remaining notes; those may never be paid or the corporation’s profit position may be so poor that future payments on the notes will not be deemed a distribution of dividends. Mitigation must abide the actual event. In so limiting recovery, we are not continuing to regard the 1946 transaction erroneously; we are recog- *210 uizing that, as to the outstanding notes, the taxpayers have not yet undergone the detriment with which the mitigation sections are concerned.[12]
Finally, we hold that plaintiffs cannot have their claim for the remainder of the 1946 tax considered under the doctrine of equitable recoupment. When Congress established the detailed provisions of the ¡mitigation sections it intended, we think, that they supersede any common-law recoupment remedies with respect to the categories designated in section 1312. Since plaintiffs are covered by Section 1312(7), they must also accept the bounds of the relief Congress has granted.
Plaintiffs are entitled to recover and judgment is entered to that effect. The amount of recovery will be determined under Rule 38 (c) in accordance with this opinion.
Whitaker, Judge, concurs in the result.
*211 FINDINGS OF FACT
The court, having considered the evidence, the stipulation of the parties, the report of Trial Commissioner Robert K. McConnaughey, and the briefs and argument of counsel, makes findings of fact as follow:
1. F. E. Gooding and Elizabeth Gooding (hereinafter referred to as plaintiffs) are husband and wife.
2. Plaintiffs filed individual income tax returns with the Collector of Internal Revenue, Columbus, Ohio, for the calendar year 1946 on March 15, 1947, and made their last payment of 1946 income tax on or before such date. The statute of limitations for refund of 1946 income tax paid, prescribed by section 322(b) (1), Internal Revenue Code of 1939, expired March 15,1950.
3. On August 24, 1946, Gooding Amusement Company, Inc. (hereinafter referred to as the corporation) was organized with F. E. Gooding, Elizabeth Gooding, and Kathleen Holleran, its president and treasurer, vice president, and secretary, respectively.
4. On August 24,1946, F. E. Gooding, Elizabeth Gooding, and Joyce Ann Gooding, their minor daughter, offered to sell their interests in certain assets to the corporation at a value of $294,970.34. These assets had been received by F. E., Elizabeth, and Joyce Ann Gooding from a partnership in which they were partners, and such assets consisted of advances to employees, accounts and notes receivable, land, buildings, cables, mechanical rides, unexpired insurance, and advance payments on equipment.
5. The depreciated book value of these assets distributed by the partnership to the partners and offered to the corporation, as determined upon audit by the Commissioner of Internal Revenue in 1948, was $180,237.29. Upon the basis of the same audit, F. E. Gooding’s share of the depreciated book value of these distributed assets was $102,992.75 and Elizabeth Gooding’s share of the depreciated book value was $51,496.38.
6. The difference, $114,733.10, between the depreciated book value of the distributed assets in the amount of $180,237.29, and the offering price of $294,970.39 to the *212 corporation, was tbe difference between the book value and the fair market value of the assets.
7. The corporation accepted the partners’ offer and in payment for such assets issued the partners 245 shares of its common stock, having a stated value of $200 per share or a total of $49,000, and ordinary negotiable judgment notes having fixed maturity dates, in the amount of $232,001.14, together with the assumption of liabilities of the partners in the amount of $13,969.25, or the total consideration of $294,970.39. In return for their share of the assets, based upon their respective interests in the partnership, plaintiffs F. E. Gooding and Elizabeth Gooding received the following:
F. E. Gooding_*140 shares of no-par common
stock haying stated value of_ $28, 000.00
5 notes due in 5 succeeding years beginning in 1947 at
$26,514.42 (or $26,514.41)
each _ 132,572.08
Individual's share of partnership debt assumed_ 7,982.43
Total consideration received _ 168,554,51
Elizabeth Gooding_*70 shares of no-par common stock having stated value of_ 14,000.00
5 notes due in 5 succeeding years beginning in 1947 at $13,257.20 (or $13,257.21) each_ 66,286. 04
Individual’s share of partnership debt assumed_ 3,991.21
Total consideration received _ 84, 277.25
* (The only stockholder, other than F. E. Gooding and Elizabeth Gooding, was their minor daughter.)
8. Plaintiffs, in their 1946 income tax returns, treated the sale as a taxable transaction, to the extent of the notes received as being “other property” under section 112(c) of the Internal Revenue Code of 1939 and reported the transaction as resulting in a recognized long-term capital gain, determined upon audit by the Commissioner of Internal Revenue in 1948 to be $98,342.64. By virtue of reporting *213 such gain, plaintiffs paid capital gains taxes for 1946. The Commissioner of Internal Revenue upon his subsequent audit determined that the transaction was a reorganization upon which gain was recognized and did not eliminate the capital gains reported in connection therewith.
9. On January 10, 1947, the corporation paid $26,514.42, being the face amount of the note due F. E. Gooding one year from date and dated August 24,1946, to plaintiff F. E. Gooding, and paid $5,000, on November 12, 1947, being the face amonut of the note due Mrs. F. E. Gooding (Elizabeth Gooding) dated August 24, 1946, and due one year after date, to plaintiff Elizabeth Gooding. On August 31, 1948, the corporation paid $26,514.42, being the face amount of a note due F. E. Gooding dated August 24,1946, and due two years after date, to plaintiff F. E. Gooding. There were also “interest” payments which are not in dispute in this case.
10. In 1946 and in subsequent years, the corporation computed depreciation expense and capital gains and losses attributable to the former partnership assets on the basis of the increased valuation given to the assets at the time of transfer to the corporation.
11. By reports of examination dated August 15,1951, October 1, 1951, and January 21, 1952, the Commissioner of Internal Revenue determined that the payments made to plaintiffs in 1947 and 1948 on account of these notes were taxable income, and that such notes were the equivalent of stock received in a nontaxable transaction.
12. The Commissioner also disputed the deductions taken by the corporation for interest paid on the notes held by plaintiffs and the use of the increased valuation on August 24, 1946, as a basis in computing the corporation’s depreciation expense and capital gains and losses.
13. Four cases in the Tax Court of the United States, Gooding Amusement Company, Inc. v. Commissioner, F. E. Gooding v. Commissioner, Elizabeth Gooding v. Commissioner, and F. E. Gooding and Elizabeth Gooding v. Commissioner, were consolidated for trial, and under the title, Gooding v. Commissioner, 23 T.C. 408, aff’d. (6th Cir. 1956), 236 F. (2d) 159, cert. denied, 252 U.S. 1031 (1957), it was *214 held in that part of the decision relating to plaintiffs that no indebtedness arose between the plaintiffs and the corporation and that the amounts paid on the notes held by plaintiffs in 1947 and 1948 were dividends under the 'broad language of section 115(a), being “distributions of corporate profits to the stockholders as stockholders and not as creditors.”
14. On June 19, 1957, plaintiffs filed claims for refund with respect to the tax imposed on account of the inclusion of these notes from the corporation in their income for 1946. Such claims were officially rejected by the Commissioner of Internal Revenue on June 16,1958.
15. The parties have, by agreement, limited this proceeding to issues relating to the plaintiffs’ right to recover and have stipulated that, should the court find that the plaintiffs have a right to recover, the amount thereof may be determined in further proceedings under Rule 38 (c).
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are entitled to recover and judgment is entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c) in accordance with this opinion.[13]

 Land, buildings, cables, mechanical rides, accounts and notes receivable, unexpired insurance, advance payments to employees, and advance payments on equipment.

 The 1954 provisions, rather than those of the 1939 Code, govern here. See 1954 Code, § 1.315.

 If tie mitigation provisions apply, the taxpayer has one year after the date of the final determination within which to take the appropriate steps to recover. Section 1314(b).

 We point out in footnote 12, infra, that the other conditions of section 1312(7) are clearly fulfilled.

 The Tax Court aid not hold, and defendant does not contend, that the notes were mere pieces of paper (without any legal validity for any purpose) or wholly unconnected with the payments made in 1947 and 1948. Rather, the court viewed the notes as if they were shares of stock or comparable obligations. The court said (23 T.C. at 419) that the taxpayers’ position with respect to the notes “was akin to that of the ordinary shareholder, who understands that his investment is subject to the risk of the venture and the prior claims of creditors.” The opinion also said (id. at 423) that “the notes which were received by petitioners [taxpayers] * * * were in fact representative of risk capital invested in the nature of stock * *

 See Note, Sections 1311-15 of the Internal Revenue Code; Some Problems in Administration, 72 Harv. L. Rev. 1536, 1543-1549 (1959).

 Sherover v. United States, 137 P. Supp. 778 (S.D.N.Y.), aff'd per curiam, 239 P. 2d 766 (C.A. 2, 1966) ; Landau v. Commissioner, 21 T.C. 414 (1953) ; Schulman v. Commissioner, 21 T.C. 403 (1953) ; Brennen v. Commissioner, 20 T.C. 495 (1953).

 Or the Service may not otherwise impose a tax -without talcing account of the premature recognition of gain in 1946.

 In Gooch and later cases, this court has Indicated that the mitigation provisions should be given a liberal and remedial interpretation. The Tax Court and the Second Circuit have seemed to adopt a more restrictive view of the statute. See Note, 72 Harv. L. Rev. 1536, 1543-1549, cited in footnote 6, supra. Eor the problems of the present case, we do not consider this difference in general approach to be decisive.

 As then viewed, Mr. Gooding realized gain on the 1-946 transaction of $65,561.76 ($168,554.51 (total consideration received) less $102,992.75 (adjusted basis of his assets)). The defendant says that he would have received the same taxable gain if the transaction had involved only the three notes still outstanding after 1948 (totaling $79,542.24 in face amount), rather than the five notes actually issued, since his total consideration would necessarily have remained the same. A compai'able calculation is made for Mrs. Gooding.

 Section 1314(c) provides that “the amount to he * * * refunded or credited * * * shall not be diminished by any credit or set-off based upon any item other than the one which was the subject of the adjustment.” (Emphasis added.)

 We do not consider Example 5 of Treas. Reg. § l,1312-7i(e) — assuming that it means what it appears to say and that it is valid — to be contrary to our holding on the extent of the recovery to be allowed the present taxpayers. The Example, we think, poses a situation in which a final determination definitively decides, in connection with the taxability of the later transaction, the propriety of recognition or nonrecognition of gain or loss in the prior transaction; since the sole ground given in the Example for the Tax Court’s upholding the Commissioner (as to the gain in the 1952 sale) is the prior erroneous nonrecognition of loss, the Tax Court must have treated directly and squarely with that issue. On that view, the whole of the prior transaction can be perhaps considered the “item” which was the subject of the error. In this case, on the other hand, the Tax Court did not decide whether or not the Goodings were or were not required to have recognized some gain in 1946 when they exchanged their business assets for stock and notes, and the court was certainly not passing upon the issue of whether any gain at all should have been recognized. Although the implication of the decision is that gain should not have been recognized as to the later satisfied (or partially satisfied) notes, the Tax Court was not treating with the 1946 transaction but only with the payments on those notes in the later years; there was no holding as to the whole of the transaction in the prior year. This analysis suffices to distinguish the Example, and we leave for future cases the issue of its validity under the statute. [Added by order of April 3,1964.]
With respect to the three notes paid in 1947 and 1948, taxpayers clearly meet the other requirements of Section 1312(7). under Section 1312(7) (A), the error disclosed in the “determination of basis” must be “in respect of any transaction on which such basis depends, or in respect of any transaction which was erroneously treated as affecting such basis.” The Tax Court’s determination was grounded on the fact that, for tax purposes, the notes were not bona fide evidences of indebtedness when they were received in 1946. Taxpayers also meet the condition (in Section 1312(7) (B)) that they are the taxpayers with respect to whom the Tax Court made its basis determination and validated the later tax; as well as the condition (in Section 1312(7) (C)) that they erroneously recognized gain in 1946 as a consequence of receiving the notes.

 On March 16, 1965, the court ordered that judgment for plaintiff be entered in accordance with a memorandum report of the trial commissioner, in the amount of $617.97 with interest according to law.