Charles B. BENENSON and Dorothy Cullman, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 39, Docket 31107.

United States Court of Appeals Second Circuit.

Argued Sept. 22, 1967.

Decided Nov. 13, 1967.

Charles C. Cohen, New York City, for plaintiffs-appellants.

Grant B. Hering, Laurence Vogel, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for defendant-appellee.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

This case raises interesting questions regarding the mitigation provisions of the Internal Revenue Code, 26 U.S.C. §§ 1311–1315, the doctrine of equitable recoupment as it has been applied in tax cases such as Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), and the relationship between those statutory provisions and that doctrine. We approve the disposition made

of these questions by the district judge in his exhaustive opinion, reported at 257 F. Supp. 101 (S.D.N.Y.1966), and affirm the judgment entered below.

The facts were found to be as stipulated by the parties, and hence it will suffice merely to state them generally here. On May 12, 1955, taxpayers entered into a "Livingstone transaction" [1] and as a result they claimed an interest deduction of $67,550 on their joint return for 1955 and reported a long-term capital gain of $60,000 on their return for 1956. It is clear that, aside from any tax consequences, their two-year venture caused taxpayers to be $7,550 out-of-pocket. Upon an audit of appellants' returns for 1955 and 1956, and after a government-proposed agreement whereby the Livingstone transaction would be unraveled was rejected by appellants,[2]

the Government assessed on April 7, 1959 a deficiency of $45,499.67 against taxpayers based upon taxpayers' incorrect deduction of $67,550 for 1955.[3] Later in 1959 taxpayers paid to the District Director for the Upper Manhattan District of New York $56,539.49 on account of these 1955 assessed deficiencies, including interest. On May 16, 1961, within two years of the 1959 payment on account of the assessed deficiencies, taxpayers filed with the District Director a claim for a refund of $45,499.67 for 1955, or, in the alternative, a claim for a refund of $14,967.30 for 1956, based on the Government's failure to take into account the $67,550 as a deduction in computing taxpayers' income in either 1955 or 1956. The District Director disallowed on the merits the claim for refund for 1955 in full, and disallowed the claim

1. The elaborate transaction entered into between taxpayers and Mr. Livingstone is clearly set forth in detail in the opinion below. As the mechanics of the transaction are relatively unimportant on this appeal it is unnecessary for us to repeat its terms.

Ingenious Livingstone tax-avoidance schemes are by now a familiar sight in the federal appellate courts. Generally they have not fared well, being recognized for what they are—paper transactions with no real "business purpose." See, e.g., Jockmus v. United States, 335 F.2d 23 (2 Cir. 1964); Becker v. Commissioner of Internal Revenue, 277 F.2d 146 (2 Cir. 1960); Lynch v. Commissioner of Internal Revenue, 273 F.2d 867 (2 Cir. 1959); Lewis v. Commissioner of Internal Revenue, 328 F.2d 634 (7 Cir.), cert. denied, 379 U.S. 821, 85 S.Ct. 43, 13 L.Ed.2d 32 (1964); Nichols v. Commissioner of Internal Revenue, 314 F.2d 337 (5 Cir. 1963); MacRae v. Commissioner of Internal Revenue, 294 F.2d 56 (9 Cir. 1961), cert. denied, 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388 (1962); Goodstein v. Commissioner of Internal Revenue, 267 F.2d 127 (1 Cir. 1959).

2. The Government suggested that appellants be assessed a deficiency for 1955 of $47,831.12, based on the disallowance in that year of the $67,550 interest deduction, and that appellants recover an overassessment of $14,700 for 1956, being a tax paid upon the $60,000 capital gains income included by taxpayers in

their 1956 return, income that the Government suggested could be eliminated. However, when the Government quite properly requested that appellants execute a closing agreement concerning 1955 so that any subsequent refund action with regard to the disallowed interest deduction would be barred, taxpayers demurred.

3. At the same time an unrelated minor deficiency in the amount of $207.30 was assessed for 1956. Appellants paid the deficiency and then included a claim for its refund with their other claims described in the text. The district court found that this $207.30 refund claim was granted by the Commissioner at the same time the other claims were disallowed. This minor claim was in an amount equal to the portion of appellants' tax for 1956 with respect to which a refund claim would still be timely on May 16, 1961, as that portion of the tax had not been paid until a time in 1959 which was less than two years prior to May 16, 1961. See 26 U.S.C. § 6511(a). Inasmuch as that small claim was allowed, it can be said that, for the purposes of this appeal, tax year 1956 was closed by the operation of the statute of limitations on April 15, 1960, three years after the last day upon which appellants could have filed their 1956 return. See 26 U.S.C. § 6511(a), (b) (2) (B); 10 Mertens, Law of Federal Taxation § 58.-25, 58.36 (Zimet ed. 1967) and cases cited therein.

\* \* \* \* \*

for refund for 1956 on the theory that any relief for 1956 was time-barred. Thereafter, on May 8, 1964, taxpayers filed this action in the district court. Their complaint repeated the alternate grounds for refund that were involved in the claim before the District Director, and additionally stated as a further ground for relief, that, to the extent the 1956 claim for refund might not have been filed within the time limit of Code Section 6511, 26 U.S.C. § 6511, the refund should nevertheless be granted under the mitigation provisions. Later appellants were given leave to amend their complaint in order also to include a request for relief under the doctrine of equitable recoupment.

▆ In dismissing taxpayers' complaint Judge Levet held that: (1) the "Livingstone transaction" involved was a "sham" and that no bona fide indebtedness was created thereby; therefore taxpayers are not entitled under any theory to deduct the $67,550 which they claimed as interest upon indebtedness; (2) inasmuch as taxpayers failed to file a timely formal or informal claim for refund for 1956 they are barred by the statute of limitations from obtaining a refund in that year; (3) the mitigation provisions can afford taxpayers no relief *at this time* because as yet there has been no "determination" with respect to taxpayers' tax liability for 1955 as is required in 26 U.S.C. § 1311; and (4) as taxpayers will have an adequate statutory remedy under the mitigation provisions as soon as the proper procedures are followed, they are not entitled to equitable recoupment. In their notice of appeal, pertinent parts of which are set out in the margin,[4] taxpayers specifically state that they are raising on appeal only questions directed toward the district court's treatment of the mitigation and recoupment issues. Not altogether altruistically, as we shall see later, they specifically disclaim any intention to bring up for review the holding that taxpayers are not entitled to an interest deduction in 1955. By having thus acquiesced explicitly in the judgment of Judge Levet and implicitly in the judgment of five other courts, including this one, that have decided exactly the same interest deduction question,[5] taxpayers have successfully deprived us of jurisdiction to review that part of the decision. See 28 U.S.C. § 2107; Fed.R. Civ.P. 73(b); Whitehead v. American Security & Trust Co., 109 U.S.App.D.C. 202, 285 F.2d 282, 286 (1960); Donovan v. Esso Shipping Co., 259 F.2d 65, 68 (3 Cir. 1958), cert. denied, 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572 (1959); Gannon v. American Airlines, Inc., 251 F.2d 476, 482 (10 Cir. 1957); Long v. Union Pacific R.R., 206 F.2d 829, 830 (10 Cir. 1953). Moreover, it appears from the notice of appeal and from appellants' brief that taxpayers do not contest the district court's holding that the claim for refund for 1956 was time-barred.[6] Hence we proceed directly to a consideration of the confusing problems of mitigation and recoupment involved in this case.

▆ The mitigation provisions were inserted into the Internal Revenue Code in 1938 in order to eliminate a double tax or a double deduction or an inequitable avoidance of tax; they permit, in certain specified circumstances, the correction of an error which had been made in the inclusion or exclusion of income, or in the allowance or disallowance of a deduction, or in the tax treatment of a trans-

---

4. \* \* \* \* \*

 Pursuant to such appeal plaintiffs intend to bring up for review so much of the opinion \* \* \* and the conclusions of law set forth therein \* \* \* as find that (a) plaintiffs are not entitled to equitable recoupment; (b) plaintiffs may not be afforded relief under the mitigation provisions of Sections 1311–1315 of the Internal Revenue Code of 1954, 26 U.S.C. 1311–1315; \* \* \*.

 Plaintiffs do not intend to bring up for review so much of said opinion and conclusion as determined that plaintiffs are not entitled to any deduction in 1955 with respect to the item of $67,550 which they claimed for 1955.

5. See cases cited in note 1, supra.

6. Were appellants to contest this holding they most assuredly would fail. See note 3, supra.

action affecting the basis of property, even though the statute of limitations had run on either the taxpayer or the Government in the year of the error. See Yagoda v. Commissioner of Internal Revenue, 331 F.2d 485, 488 (2 Cir.), cert. denied, 379 U.S. 842, 85 S.Ct. 81, 13 L.Ed. 2d 48 (1964); 2 Mertens, Law of Federal Income Taxation § 14.01 (Zimet & Stanley ed. 1967). A distinct need for such relief had been demonstrated. Judicial application of the doctrines of estoppel, recoupment, and set-off—the prior method of mitigating the inequities which arose when, as to the treatment of a particular item in an unclosed year, either the Commissioner or the taxpayer successfully maintained a position inconsistent with an erroneous treatment of the same item in a year already closed by the operation of some rule of finality or by the running of the statute of limitations—had been neither uniform nor systematic. See S.Rep.No. 1567, 75th Cong., 3d Sess. 49 (1938). Congress decided that legislation was needed to "supplement the equitable principles applied by the courts and to check the growing volume of litigation by taking the profit out of inconsistency whether exhibited by taxpayers or revenue officials and whether fortuitous or the result of design." Ibid. Legislation was forthcoming which soon found its way into I.R.C.1939 as Section 3801 of that Code. The 1939 Code provision was later expanded and, as so expanded, became Sections 1311–1315 of I.R.C.1954, 26 U.S.C. §§ 1311–1315.

 In order to qualify in the present case for mitigation under these sections as to the alleged error in their 1956 return, the appellants must satisfy each of the several threshold requirements which appear in Sections 1311–1315. Among these is the requirement that there be a "determination" in one year (here 1955) the effect of which demonstrates that a position taken by the Commissioner or a taxpayer in another tax year (here 1956) was erroneous where, at the time of the "determination" the other tax year is closed because of the running of the statute of limitations. When faced with the question whether there had been such a "determination" in this case, the district court held, and we think correctly, that there had not been one, inasmuch as the district court resolution of the interest deduction question could be appealed to our court up to sixty days after the entry of judgment in the district court. "Determination" is defined quite explicitly in § 1313(a) as meaning:

> (1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, *which has become final* * * *. (Emphasis supplied.)

Appellants on this appeal concede that the district court was correct in holding that the necessary "determination" did not become final when the district court's judgment was entered—but they contend that, as they specifically excluded the interest deduction issue from this appeal and as their time for appealing that issue has now run out, our court does have before it the required "determination." Thus, appellants claim, we may proceed to decide whether appellants are entitled to a refund under the mitigation provisions. We disagree.

 We are less certain than are appellants that the "determination" requirement has now been fulfilled;[7] but, as we view this case, we need not decide

---

7. By specifically declining to appeal the holding denying them the interest deduction they claimed on their 1955 return the appellants have caused that holding to become "final" insofar as principles of finality and res judicata are concerned. See Gannon v. American Airlines, Inc., 251 F.2d 476, 482 (10 Cir. 1957); cf. Yagoda v. Commissioner of Internal Revenue, 331 F.2d 485, 488 (2 Cir.), cert. denied, 379 U.S. 842, 85 S. Ct. 81, 13 L.Ed.2d 48 (1964). However, that does not necessarily mean that this holding has become a "determination" for mitigation purposes. The holding of the district court which has now become final was that no interest deduction is warranted. Still an open question on this appeal, because of the recoupment claim is that of appellants' tax liability

that issue. The Government contends, and we agree, that another of the threshold requirements, the requirement contained in Section 1314, has not been fulfilled here. Section 1314(b) clearly provides that the adjustment authorized by the mitigation provisions shall be made:

> * * * by assessing and collecting, or refunding or crediting, the amount thereof in the same manner as if it were a deficiency determined by the Secretary or his delegate with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year or years, 26 U.S.C. § 1314(b).

Thus it is contemplated that, once a determination has occurred, the taxpayer seeking mitigation should file with the Commissioner a claim for refund based on Sections 1311–1315. See S.Rep.No. 1567, supra, at 52; Maguire, Surrey & Traynor, Section 820 of the Revenue Act of 1938 (part 2), 48 Yale L.J. 719, 747. This court recognized this procedure not long ago in Yagoda v. Commissioner of Internal Revenue, 331 F.2d 485, 489 (2 Cir.), cert. denied, 379 U.S. 842, 85 S.Ct. 81, 13 L.Ed.2d 48 (1964); see also Int.Rev.Regs. § 1.1314(b)–1. It is manifest that, on the facts of the present case, appellants could not have complied with § 1314(b) because any "determination" that might have been made could not have occurred until sixty days after the district court decision on the interest deduction question. We are aware it has been held in one case that

where there is a claim for refund pending at the time of the "determination," adequately advising the Commissioner of the grounds relied upon for an adjustment, it is not necessary that taxpayer file another claim within the one-year period after the date of the "determination." Moultrie Cotton Mills v. United States, 151 F.Supp. 482, 138 Ct.Cl. 208 (1957). However, *Moultrie* is distinguishable from the present case for there the Court of Claims emphasized that taxpayer had expressly invoked the benefits of the mitigation provisions when it filed its first claim with the Commissioner so that the Commissioner was adequately apprised of the grounds for relief put forth by the taxpayer. Id. at 486. In the present case, the mitigation provisions were not mentioned by taxpayers until relief was sought thereunder in the complaint filed by them in the district court, a long time after their claim had been filed with and dismissed by the District Director. The framework of the mitigation provisions clearly envisions a two-step procedure: First, a "determination," followed by, second, the filing of a claim for refund (or assessment of deficiency); appellants here have completed no more than one of the steps. Thus we hold that, at this time, appellants are not entitled to a refund under the mitigation provisions.

We turn now to appellants' claim for relief based on the doctrine of equitable recoupment. At the outset it should be noted that recoupment, an equitable remedy not specifically authorized by the Internal Revenue Code, Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), should not be employed where there appears to be a full and adequate remedy under the provisions of the Code. Wells Fargo Bank & Union Trust Co. v. United States, 245 F.2d 524, 536 (9 Cir. 1957); Maguire,

---

for 1955 in connection with this transaction. It would seem that the "determination" contemplated in § 1311 must logically be of the latter variety, for until a decision is made regarding ultimate tax liability for 1955 for the "Liv-

ingstone transaction" there can be no certain need for an adjustment. See Maguire, Surrey & Traynor, Section 820 of the Revenue Act of 1938 (part 2), 48 Yale L.J. 719, 720 (1939); Note 72 Harv.L.Rev. 1536 1542 (1959).

Surrey & Traynor, supra, at 774–75.[8] Thus the initial question which must be answered in deciding whether appellants are entitled to equitable recoupment is whether it appears that the mitigation provisions will give them an adequate remedy once they have complied with all the statutory procedures. This approach is the same as the one used in evaluating part of the claim in Gooding v. United States, 326 F.2d 988, 995–996, 164 Ct.Cl. 197, cert. denied, 379 U.S. 834, 85 S.Ct. 67, 13 L.Ed.2d 42 (1964).

■■■ In following this approach the district court concluded that appellants had an adequate statutory remedy, and therefore it dismissed the recoupment claim. That court was of the belief that appellants would qualify for mitigation under the § 1312(4) "double disallowance

of a deduction" circumstance of adjustment.[9] The disallowance of the interest deduction for tax year 1955 constitutes one of the two required disallowances. To find another, the lower court chose to rely on this court's decision in Becker v. Commissioner of Internal Revenue, 277 F.2d 146 (2 Cir. 1960), in which we held, under what is now Section 1234 of the Code, 26 U.S.C. § 1234, that the out-of-pocket or economic loss on a Livingstone transaction may be claimed in the year in which the transaction comes to an end as a capital loss attributable to the failure to exercise an option. Accord, Mac-Rae v. Commissioner of Internal Revenue, 294 F.2d 56 (9 Cir. 1961), cert. denied, 368 U.S. 955, 82 S.Ct. 398, 7 L. Ed.2d 388 (1962). Further support for the *Becker* result may be found in dicta

8. We perceive another reason not briefed by the parties in this action why recoupment should not be available whenever a case is arguably within the scope of the mitigation provisions. Congress intended that the mitigation provisions would introduce some measure of uniformity and predictability into this area of tax litigation, see S.Rep.No. 1567, 75th Cong. 3d Sess. 49 (1938). This congressional intent would imply that some measure of exclusivity ought to be afforded to these provisions. Congress also viewed the mitigation provisions as supplementary to the equitable principles which had theretofore been applied by the courts. S.Rep.No. 1567 supra. Thus it is logical to conclude that the mitigation remedy is the only remedy available in a case which falls within the general scope of the mitigation provisions. See Gooding v. United States, 326 F.2d 988, 164 Ct.Cl. 197, cert. denied, 379 U.S. 834, 85 S.Ct. 67, 13 L.Ed.2d 42 (1964); Maguire, Surrey & Traynor, supra note 7, at 773–775, especially n. 195; see generally Comment, 42 N.Y. U.L.Rev. 537, 542–544 (1967). Such a conclusion would also be supported by the fact that adjustment is commonly regarded as a fairer remedy than recoupment. See Note, 72 Harv.L.Rev. 1536, 1537–38 (1959). Recoupment, then, would not be available if a court should find that the situation in question falls within the general scope of the statutory provisions but does not meet each requirement of the statute.

That such limited exclusivity is probably the correct analysis of the relationship between the statutory mitigation provisions and the doctrine of recoupment is demonstrated by the fact that this exclusivity solves a circularity problem of sorts which may plague adjudication in the present case. We have said in note 7, supra, that "determination" probably means the determination of a tax liability arising from the transaction in question. Such a "determination" then, could never occur here until the recoupment issue is decided. However, the recoupment issue could not be decided without observing whether there would be an adequate remedy under the Code. This latter issue, of course, returns us to a survey of the non-existent "determination" to see if, when determined, it would fall within the scope of the mitigation provisions. This seeming circularity could be avoided by precluding the recoupment claim at the outset.

9. An adjustment may be made under the mitigation provisions only if the "determination" and error in question fall within the terms of one of the "circumstances of adjustment" listed in § 1312. Both parties here agree that if this fact pattern qualifies under any of the "circumstances" it must qualify under § 1312 (4):

> DOUBLE DISALLOWANCE OF A DEDUCTION OR CREDIT—The determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year, or to a related taxpayer.

in Lynch v. Commissioner of Internal Revenue, 273 F.2d 867, 873 (2 Cir. 1959), and in Goldstein v. Commissioner of Internal Revenue, 267 F.2d 127, 132 (1 Cir. 1959). On the *Becker* theory, then, appellants would be entitled to claim a $7,550 capital loss in 1956 but for the fact that 1956 is now closed because the statute of limitations for that year has run. Moreover, such a capital loss is treated as a deduction for mitigation purposes. See Olin Mathieson Chem. Corp. v. United States, 265 F.2d 293 (7 Cir. 1959). It is sufficient that appellants *could have* claimed the deduction in 1956. They need not actually have claimed it. See Olin Mathieson Chem. Corp. v. United States, supra at 297; Stein v. United States, 240 F.Supp. 818 (S.D. Iowa 1964), aff'd per curiam, 346 F.2d 569 (8 Cir. 1965); Comment, 1 UCLA L.Rev. 60, 68–70 (1953). This being the case, the mitigation provisions should allow an adjustment in appellants' 1956 tax return so as to show the $7,550 capital loss.[10]

The Government strenuously contends that *Becker* should no longer be followed in light of the contrary decisions by the Seventh Circuit in Lewis v. Commissioner of Internal Revenue, 328 F.2d 634 (7 Cir.), cert. denied, 379 U.S. 821, 85 S.Ct. 43, 13 L.Ed.2d 32 (1964) (Livingstone transactions, being sham in their entirety, do not create such options), and by the Tax Court in Morris R. DeWoskin, 35 T.C. 356 (1960) (losses not deductible under § 1234 unless allowable under §

165(c)) and Malden Knitting Mills, 42 T.C. 769 (1964) (another similar rejection of *Becker*). Moreover, it contends that some doubt has been cast upon the continued vitality of *Becker* in this circuit by our opinion in Jockmus v. United States, 335 F.2d 23 (2 Cir. 1964). Appellants point to the Government's apparent adamant posture toward *Becker* and the district court's concession that this circuit might not follow *Becker* as evidence that the obtaining of any relief under the mitigation provisions is unlikely, uncertain, and contingent. Therefore, they say, recoupment should have been granted.

We find no indication in *Jockmus*, supra, that the vitality of *Becker* in this circuit is in jeopardy. In that opinion there is indeed an acknowledgment of the fact that the Seventh Circuit and the Tax Court are *contra*, but we specifically stated there that we did not pass on the Government's suggestion that we overrule *Becker*, 335 F.2d at 30. Thus *Becker* is still the controlling law in this circuit, and we see no reason for suggesting in this case that its holding will not be followed. Accordingly, we agree with the district court that appellants probably have an adequate statutory remedy.

Appellants further contend, however, that even if *Becker* is followed in this circuit the Government has indicated sufficient disrespect for our holding there as to force the appellants to relitigate in the courts if they are to continue to press

---

10. The adjustment allowed by the mitigation provisions can affect no more than the item with respect to which the error was made, "with due regard given to the effect of the item in the computation of gross income, taxable income, and other [similar] matters * * *." 26 U.S.C. § 1314(a); see Gooding v. United States, 326 F.2d 988, 995, 164 Ct.Cl. 197, cert. denied, 379 U.S. 834, 85 S.Ct. 67, 13 L. Ed.2d 42; Gill v. Commissioner of Internal Revenue, 306 F.2d 902, 906 (5 Cir. 1962); S.Rep.No. 1567, supra note 8 at 49, 51. In the present case we believe that the failure of the taxpayers to report their out-of-pocket $7,550 as a capital loss deduction in their 1956 return, viewed together with the disallow-

ance of the $67,550 deduction they took on their 1955 return, should be considered an error correctible by adjustment under the mitigation provisions.

Though the issue is not before us and we do not resolve it, it would appear that, as the out-of-pocket $7,550 is the difference between the disallowed $67,-550 and the $60,000 capital gain the taxpayers reported as taxable, the $60,000 capital gain should be eliminated. Only by making this adjustment would it seem that 26 U.S.C. § 1314(a) is complied with and due regard given to the effect the sham Livingstone transaction had upon the taxable income of the taxpayers.

for their refund under the mitigation provisions. That they will be subjected to such a long and costly procedure to obtain their refund, they argue, is sufficient to show that the mitigation remedy is inadequate. Although we sympathize with appellants, this is the procedure Congress had in mind. Moreover, as we pointed out earlier, once a situation is arguably covered by the mitigation provisions it is likely that Congress intended that the situation be remedied exclusively under those provisions. See note 8 supra. Finally, the fact that the Government argues strongly to us that we should adopt a particular position on an issue cannot always be relied upon as an accurate forecast of the position the Commissioner will take when he is later presented with the same issue.

The decision of the district court is affirmed.