**Lucy Cocchiara, Wife of and Louis J. ROUSSEL**

v.

**UNITED STATES of America.**

**Civ. A. No. 81–1315.**

United States District Court,
E.D. Louisiana.

Sept. 28, 1984.

Peter J. Butler, Butler & Heebe, New Orleans, La., for plaintiffs.

Jack D. Warren, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MENTZ, District Judge.

The plaintiffs, Louis J. Roussel and his wife, Lucy Cocchiara ("taxpayers"), have brought suit seeking to recover a refund for an overpayment of their individual income taxes for the years 1960–1966. The taxpayers undeniably made an overpayment for these years in the amount of $511,878.03; of this amount, they have been refunded $228,535.00. *Republic Petroleum Corp. v. United States*, 613 F.2d 518 (5th Cir.1980) (holding that taxpayers were precluded by the statute of limitations from recovering the balance of the overpayment). In its decision, the Fifth Circuit specifically left open the question of whether taxpayers could obtain relief from the lower court judgment by relying on the mitigation provisions of the Internal Revenue Code.[1] *Id.*, at 527. This is the question now before the Court.

### I. FACTUAL BACKGROUND

The factual sequence underlying this litigation is important to a clear understanding of the legal principles at issue. In 1959, taxpayers sold two mineral leases to Republic Petroleum Corporation for $2 million. Taxpayers, relying on the installment sale provisions of the Internal Revenue Code,[2] reported the gain on the sale incrementally over the tax years 1959–1965. The Internal Revenue Service ("Service") decided to investigate the taxpayers' financial dealing, and by agreement between the parties, the statute of limitations on assessments for the years 1959–1966 was extended through June 30, 1972.[3] Prior to June 30, 1972, the Service issued an audit statement claiming; *inter alia*, that the mineral lease sale did not qualify for installment sale treatment. The Service maintained that all of the gain from the sale of the mineral leases had to be recognized in tax

---

1. I.R.C. §§ 1311–1315.

2. I.R.C. § 453.

3. This procedure is authorized by statute. I.R.C. § 6501(c)(4). The taxpayer is afforded an additional six months after the expiration of the extended assessment deadline to file a claim for a refund. I.R.C. § 6511(c)(1). The taxpayer failed to perfect a refund claim within this grace period. *Republic Petroleum Corp.*, 613 F.2d 518, 524, n. 15.

year 1959. In addition, the Service claimed that the taxpayers had underestimated their income on account of factors other than the mineral lease sale for the years 1960–1966.[4] The Service did concede, however, that the taxpayers were entitled to a deduction from gross income for that amount of gain reported in tax years 1960–1965 on account of the installment sale. The Service netted the additional assessments (based on alleged miscalculations of income due to factors other than the mineral lease sale) against the credit due to taxpayers (because of the inclusion of the installment gain from the mineral lease sale) for each tax year 1960–1965. As a result of the audit, the Service determined that the taxpayers had tax deficiencies in 1959, 1961, 1963, 1964, 1965 and 1966; overpayments existed for the years 1960 and 1962. The 1960 and 1962 overpayments were applied, *pro tanto*, by the Service to satisfy the 1959 deficiency.

On March 13, 1972, taxpayers paid the deficiency assessments. They then filed a claim for refund on May 16, 1972. This claim was rejected by the Service. Shortly thereafter, taxpayers filed a lawsuit that was voluntarily dismissed by them. It was not until August 15, 1973, that a second lawsuit was filed. At trial, the taxpayers not only contested the treatment of the mineral lease sale but also contested the inclusion of additional income in the tax years 1960–1965 attributable to the assessments for other items. After trial on the merits, the district court ruled in favor of the Service on the installment sale issue and in favor of the taxpayers on substantially all other issues. *Republic Petroleum Corp. v. United States*, 397 F.Supp. 900, 928 (E.D.La.1975). Because the taxpayers had paid income taxes on the additional assessments which the Service had erroneously charged to them, the district court determined that there had been an overpayment of taxes in the amount of

$511,878.03. Nevertheless, the district court concluded that the taxpayers were entitled to a refund of only $242,753.15[5] due to the statute of limitations.[6] Hence, the taxpayers brought this suit to recover the balance of the overpayment.

## II.  THE MITIGATION STATUTES

The mitigation statutes were enacted to ameliorate the harsh effect of the statute of limitations in situations where, because of the maintenance of a position in one tax year that is inconsistent with the treatment of the same item in a barred year, a taxpayer is either subjected to a double tax or benefitted by a double deduction. *Karpe v. United States*, 167 Cl.Ct. 280, 335 F.2d 454, 459 (1964), *cert. denied*, 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965). The congressional history, however, clearly indicates that the statute was not designed to liberally circumvent the limitations statute. The Senate Report states:

> The legislation here proposed is based upon the following principles:
>
> (1) to preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency, and (b) under no circumstances affect the tax save with respect to the influence of the particular items involved in the adjustment.

S.Rep. No. 1567, 75 Cong., 3d Sess. 49. Nevertheless, the Report goes on to say that "disputes as to the year in which income or deductions belong ... should *never* result in a double tax, or a double deduction of tax...." (Emphasis added.) *Id.* Thus, while intimating that a liberal construction of the statute is consonant with its remedial purpose, the Fifth Circuit has held that it is necessary for the facts of

---

**4.** The details of these additional assessments are not important to the Court's decisions. What is important, however, is that these additional assessments were made and that they were independent of and unrelated to the adjustments made with respect to the mineral lease sale.

**5.** This amount was reduced to $228,535.27 by the appellate court. *Id.* at 524–25.

**6.** For a detailed discussion of the law pertaining to the statute of limitations issue, see *Republic Petroleum Corp.*, 613 F.2d at 525–27.

each case to fit "into the concrete, detailed requirements set out in the statute." *United States v. Rachal,* 312 F.2d 376, 383 (5th Cir.1962). *See also Olin Mathieson Chemical Corp. v. United States,* 265 F.2d 293 (7th Cir.1959). Because it is the taxpayers who seek to have the bar of the statute of limitations lifted, it is they who have the burden of proof. *United States v. Rushlight,* 291 F.2d 508 (9th Cir.1961).

The mitigation provisions specify four requirements which the taxpayer must meet to prevail in this case:

(1) There must be a final determination, I.R.C. §§ 1311(a), 1313;

(2) The determination must adopt a position maintained by the Service which is inconsistent with the erroneous treatment of such item in a barred year, I.R.C. § 1311(b)(1); Treas.Regs. § 1.1311(a)–1(b);

(3) The correction of the erroneous treatment of the item in the barred year must be unfavorable to the Service, I.R.C. § 1311(b)(1); and,

(4) The determination must require the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year. I.R.C. § 1312; Treas.Regs. § 1.1312–1(a).

There is no dispute over the first requirement. The circuit court opinion in *Republic Petroleum Corp.* constitutes a final determination. I.R.C. § 1313(a)(1); Treas. Regs. § 1.1313(a)–1; *Benenson v. United States,* 385 F.2d 26, 30 (2d Cir.1967). Likewise, there can be little dispute that requirement number three has also been met.

A decision that the taxpayer has been taxed twice on the mineral lease sale, when corrected, would be adverse to the Service. Thus, the central dispute is over requirements number two and number four.

Critical to both requirement number two and requirement number four is the "erroneous treatment" of an item included in the gross income of a barred year. Thus, in this case, the taxpayers must establish that the gain from the mineral lease sale was erroneously included in the gross income for tax years 1960–1965. Taxpayers argue that their original treatment of this gain on their tax returns as gross income in these years demonstrates the erroneous double inclusion. The taxpayers, however, confuse their *position* on how the gain should have been treated with the way it actually was treated for tax purposes.

A review of the Special Master's Supplemental Report clearly indicates that the taxpayers were taxed on the gain from the sale of the mineral leases in only one tax year, namely 1959. This is because the gain reported by the taxpayer for years 1960–1965 on account of the installment sale election was credited against other income that the Service determined had not been reported by the taxpayers in those years.[7] Thus, the gain resulting from the mineral lease sale was not included in the gross income for the years 1960–1965 at the time the taxpayers' tax liability for those years was established. The additional tax liability for those years resulted, not from the erroneous inclusion of the mineral lease gain, but rather from the erroneous inclusion of other items of income.[8] Ac-

---

7. The Special Master states:

It is imperative to keep in mind that there were many more issues in the original contest that [sic] the installment gain on the Bollinger–Melancon Leases. For 1959 the plaintiffs paid a deficiency of $482,723. Virtually all of this assessment resulted from the installment gain being taxed in this year.

For the period 1960–1966, the plaintiffs paid deficiencies totalling $227,933 ($31,757 + $97,654 + $27,522 + $63,567 + $7,433). In this period, issues not related to the installment gain created potential additional tax liabilities in excess of $500,000. Why, then, was the plaintiffs' deficiency assessment considerably less than $500,000 with overpayments

resulting in two of the years (1960 and 1962) at issue? Because, admittedly, *the Service reduced* their proposed adjustments (increases in taxable income) by the *installment gain reported in the plaintiffs' original returns for the years 1960 through 1965.* (Emphasis added.)

Special Master's Supplemental Report, p. 4. (Record Document No. 36.)

8. Although the district court decided that the additional assessments were unjustified, the fact that these assessments were based on items of income other than the mineral lease sale remains unchanged.

cordingly, the position maintained by the Service and adopted by the *Republic* court, namely that all the gain from the mineral lease sale had to be reported in 1959, was not inconsistent with an erroneous inclusion of the other items of income in the taxpayers' gross income for the years 1960–1966.

## III. THE SPECIAL MASTER'S REPORTS

For the most part, the facts recited above are not inconsistent with the findings made by the Special Master. The Court believes that although the Special Master did make some erroneous factual statements,[9] these statements were made only because of his incorrect legal assumptions. The Special Master reasoned that because the taxpayers' position on substantially all of the additional assessments levied by the Service with respect to the other items of income was upheld by the *Republic* court, the taxpayers, *in effect*, were taxed twice on the mineral lease transaction.[10] This is incorrect. The taxpayers were taxed once on the mineral lease sale and once on the other items of income. The *Republic* court found that the additional assessments based on these other items were in contravention of the law and, accordingly, awarded a refund to the taxpayers. Unfortunately, however, the statute of limitations barred the taxpayers from

obtaining a full recovery.[11] Thus, the factual findings of the Special Master are adopted to the extent that they are not inconsistent with this opinion.

## IV. CONCLUSION

The *Republic* Court did not adopt a position maintained by the Service with respect to the mineral lease gain that was inconsistent with the treatment of such gain in any other tax year. The gain was properly included in the taxpayers' gross income in 1959 and excluded from the taxpayers' gross income in 1960–1965. Accordingly, the taxpayers have failed to meet their burden of proof on requirements number two and number four.

IT IS ORDERED that judgment be entered in favor of defendant and against plaintiff within ten days, each party to bear its own costs. The professional fees of the Special Master are to be taxed as court costs.

---

9. For example, the Special Master states at page six of his report, "... the Secretary of the Treasury was successful in having the plaintiffs taxed on the same item of income in different taxable years." This statement is clearly erroneous for the reasons stated *infra*. (Record Document No. 30.)

10. The following excerpt from the Special Master's Supplemental Report illustrates his argument.

The fact of the matter is that the action of the Service in removing the gain for the years 1960 through 1965, in order to compute the deficiency of the plaintiffs for those years, was little more than a mathematical gesture. It was a gesture that became almost totally worthless due to the many issues unrelated to the installment gain when one realizes that very few of the issues were allowed to withstand the scrutiny of the Court.

In short, it could be *said* that the Service gave the plaintiffs credit for taxes paid on the

installment gain, however, [sic] that credit could only be found offsetting proposed taxes that the plaintiffs did not have to pay in the first place. It appears that the Service would have had to prevail in almost every issue of the original contest, and in the amount contested, for the plaintiffs to have received their actual proper credit. To the extent the Service did not prevail, the plaintiffs are still entitled to a cash refund or credit against a valid final tax liability. (Emphasis in original.)
Special Master's Supplemental Report, p. 5. (Record Document No. 36.)

11. As noted by the Special Master, the taxpayers had ample opportunity to file suit for a refund after the 1972 assessments were issued. Special Master's Report, p. 5 (Record Document No. 30.) In fact, they did. But, as mentioned above, they voluntarily dismissed the initial lawsuit. By the time the second lawsuit was filed, the limitations period had run.